# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
FARM-TO-CONSUMER DEFENSE )
FUND et al., )
)
Plaintiffs, )
)                    **No. 08-CV-1546-RMC**
v. )
)
UNITED STATES DEPARTMENT )
OF AGRICULTURE and MICHIGAN )
DEPARTMENT OF AGRICULTURE, )
)
Defendants. )
_____)

## REPLY MEMORANDUM IN SUPPORT OF USDA'S MOTION TO DISMISS

MICHAEL F. HERTZ
Deputy Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

JOHN R. GRIFFITHS
Assistant Branch Director

PETER T. WECHSLER
Trial Attorney
United States Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Tel.: (202) 514-2705
Fax: (202) 616-8470
Email: peter.wechsler@usdoj.gov

Dockets.Justia.com

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................. -ii-

INTRODUCTION ............................................................................................... 1

I.     PLAINTIFFS LACK STANDING TO SUE THE USDA, BECAUSE
     THEIR ALLEGED INJURIES ARE NOT FAIRLY TRACEABLE TO
     THE USDA.... ............................................................................................ 2

     A.     Plaintiffs' Claims of Harm Result from the MDA's Order that Requires the
          Use of RFID Tags for Cattle Being Moved Within Michigan, and from the
          MDA's Issuance of PINs to Michigan Farmers ........................................ 2

     B.     Plaintiffs' Factual Allegations Are Insufficient to Establish that their
          Alleged Injuries Are Fairly Traceable to the USDA ............................... 4

          1.     Plaintiffs Have Not Demonstrated that the July 2007 Final Rule
               Requires the Use of RFID Tags or PINs in Michigan ................... 4

          2.     Plaintiffs' Allegations Regarding the Relationship Between the
               MDA and the USDA Are Insufficient to Confer Plaintiffs with
               Standing to Sue the USDA ........................................................... 6

               (a).     The Memoranda of Understanding .................................... 7

               (b).     The Funding Sought by the MDA from the USDA ......... 10

          3.     Plaintiffs' Allegations Regarding the VS Memorandum Are
               Insufficient to Confer Plaintiffs with Standing to Sue the USDA .12

II.    PLAINTIFFS LACK STANDING TO ASSERT THEIR CLAIMS AGAINST
     THE USDA, BECAUSE THEIR ALLEGED INJURIES WOULD NOT
     BE REDRESSED BY THE RELIEF THEY SEEK. ......................................... 15

III.   PLAINTIFFS FAIL TO STATE CLAIMS UPON WHICH RELIEF CAN
     BE GRANTED. ......................................................................................... 16

     A.     Plaintiffs Fail to State a Claim upon which Relief Can be Granted
          Under the APA's Notice-and-Comment Provisions. .............................. 17

     B.     Plaintiffs Fail to State a Claim upon which Relief Can be Granted
          Under the Regulatory Flexibility Act. .................................................. 17

C.       Plaintiffs Fail to State a Claim upon which Relief Can be Granted
         Under the APA's Substantive Provisions.  ................................................ 18

D.       Plaintiffs Fail to State a Claim Upon which Relief Can be Granted
         Under the  National Environmental Policy Act.  ..................................... 20

E.       Plaintiffs Fail to State a Claim Upon which Relief Can be Granted
         Under the Religious Freedom Restoration Act. ...................................... 21

F.       Plaintiffs Fail to State Due-Process Claims Upon which Relief
         Can be Granted.  ...................................................................................... 22

CONCLUSION ........................................................................................................... 22

# TABLE OF AUTHORITIES

**CASES**                                                                              **PAGE(s)**

Atlantic Urological Assoc. v. Leavitt,
   549 F. Supp. 2d 20 (D.D.C. 2008) ................................................................ 16

Cement Kiln Recycling Coal. v. EPA,
   255 F.3d 855 (D.C. Cir. 2001) ..................................................................... 18

City of Detroit v. Franklin,
   4 F.3d 1367 (6th Cir. 1993) ............................................................... 10, 12, 13

Coal. for Underground Expansion v. Mineta,
   333 F.3d 193 (D.C. Cir. 2003) ..................................................................... 19

Florida Audubon Soc'y v. Bentsen,
   94 F.3d 658 (D.C. Cir. 1996) (en banc) . ................................................. 15-16

Found. On Econ. Trends v. Lyng,
   943 F.2d 79 (D.C. Cir. 1991) ............................................................ 18, 19, 20

Fulani v. Brady,
   935 F.2d 1324 (D.C. Cir. 1991) ................................................... 10, 11, 12, 16

Lujan v. Defenders of Wildlife,
   504 U.S. 555 (1992) ............................................................................ passim

Lujan v. Nat'l Wildlife Fed'n,
   497 U.S. 871 (1990) ............................................................................ 18, 19

Microwave Acquisition Corp. v. FCC,
   145 F.3d 1410 (D.C. Cir. 1998) ..................................................................... 4

Nat'l Treas. Employees Union v. United States,
   101 F.3d 1423 (D.C. Cir. 1996) ..................................................................... 4

Pub. Util. Dist. No. 1 v. FERC,
   272 F.3d 607 (D.C. Cir. 2001) ................................................................ 10, 13

Renal Physicians Ass'n v. HHS,
   489 F.3d 1267 (D.C. Cir. 2007) ................................................................ 4, 16

Sierra Club v. EPA,
   292 F.3d 805 (D.C. Cir. 2002) ..................................................................... 4

Simon v. Eastern Ky. Welfare Rights Org.,
        426 U.S. 26 (U.S. 1976) ....................................................................... 11

Steel Co. v. Citizens for a Better Env't,
        523 U.S. 83 (1998) ................................................................................ 2

Systems Council EM-3 v. AT&T Corp.,
        159 F.3d 1376 (D.C. Cir. 1998) ........................................................... 5

US Ecology v. Dep't of Interior,
        231 F.3d 20 (D.C. Cir. 2000) ............................................................. 15

Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.,
        454 U.S. 464 (1982) .............................................................................. 2

Village of Bensenville v. FAA,
        457 F.3d 52 (D.C. Cir. 2006) ............................................................. 21

Wilderness Soc'y v. Norton,
        434 F.3d 584 (D.C. Cir. 2006) ........................................................... 15

Zanoni v. USDA,
        C.A. No. 8-939, Mem. Op. (D.D.C. March 31, 2009) ........................... 3, 6, 12

**REPLY MEMORANDUM IN SUPPORT OF USDA'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Defendant the United States Department of Agriculture (USDA) submits the Reply Memorandum in order to respond to contentions made by Plaintiffs in their Opposition to the USDA's Motion to Dismiss the First Amended Complaint (Pl. Opp.) [Docket No. (#) 34].

## INTRODUCTION

Plaintiffs' Opposition contains extensive discussion of rules and guidance documents issued by the USDA to develop aspects of the National Animal Identification System (NAIS), a voluntary, nationwide Federal-State-Industry initiative that is designed to trace animals associated with an incident of a livestock disease, and thereby promptly contain and eradicate the disease. However, nothing in their discussion or in the materials that accompanied their brief establishes that their alleged injuries are fairly traceable to requirements imposed by the USDA, or that their injuries would be redressed by a favorable decision on such claims. Neither plaintiffs' generalized dissatisfaction with the NAIS as a whole, nor their alleged injury resulting from rules issued for Michigan farmers by defendant the Michigan Department of Agriculture (MDA) in administering the Tuberculosis Program (TB Program), a cooperative Federal-State program that was established in 1917 to control and eradicate bovine tuberculosis, is sufficient to confer plaintiffs with standing to assert their claims against the USDA. The Court therefore lacks jurisdiction over this action. Furthermore, even assuming that plaintiffs had met their burden of demonstrating jurisdiction, they fail to state claims upon which relief can be granted.

I.      **PLAINTIFFS LACK STANDING TO SUE THE USDA, BECAUSE THEIR
        ALLEGED INJURIES ARE NOT FAIRLY TRACEABLE TO THE USDA.**

Plaintiffs, who bear the burden of establishing federal jurisdiction, see Steel Co. v.

Citizens for a Better Env't, 523 U.S. 83, 104 (1998), must show that they have standing to seek

the relief they request from the USDA.  See Valley Forge Christian Coll. v. Americans United

for Separation of Church & State, Inc., 454 U.S. 464, 471 (1982).  The elements of Article III

standing "are not mere pleading requirements but rather an indispensable part" of plaintiffs'

case.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

A.      **Plaintiffs' Claims of Harm Result from the MDA's Order that Requires the
        Use of RFID Tags for Cattle Being Moved Within Michigan, and from the
        MDA's Issuance of PINs to Michigan Farmers.**

Plaintiffs allege that the seven plaintiff farmers who reside in Michigan (Farmers) are

required to affix electronic radio-frequency identification devices (RFID tags) to cattle, as

opposed to the metal identification tags used previously, before they move cattle from one

premises to another within Michigan.  See Pl. Opp. at 4-6; Declaration of Andrew Schneider

[# 34-16] at 1, 3; First Amended Complaint (Comp.) [Docket No. (#) 27] ¶¶ 161, 168.  Plaintiffs'

claim of harm is based on an order issued by the MDA under the TB Program, effective March

1, 2007.  See Pl. Opp.  at 16-17 (identifying the requirements for the use of RFID tags as

"specific governmental actions" that have caused harm to plaintiffs); Comp. ¶¶ 159, 168; see

also MDA's Motion to Dismiss [# 31-2] at 7 & Appendix (App.) [# 31-3] at 17.

Although Plaintiffs' Opposition is silent on this point, the affidavits submitted by

plaintiffs suggest that several of the Farmers (who are located outside the Modified Accredited

Zone) have availed themselves of the MDA's religious exemption to the MDA's 2007 order, see

Memorandum dated December 20, 2006, from the MDA to concerned producers (MDA's

2

Motion to Dismiss, App. [#31-3] at 65), and have thus brought their cattle to market without first tagging them at their farms.  <u>See</u> Declaration of Robert Keyworth [#34-13] ¶ 5 (referring to "RFID tag[s] attached at the stockyard to our cattle"); Declaration by Joe Golimbieski [# 34-11] ¶ 4 (asserting that, if he wants to sell animals, he must pay a charge to the stockyard for the cost of the RFID tag and labor); <u>see also</u> Affidavit of Kevin Kirk (Kirk Aff.) (MDA's Motion to Dismiss, App. [#31-3] ¶ 13 ("[m]any of the Plaintiffs in this lawsuit have brought their cattle for marketing without an RFID tag and have had the tag applied upon delivery.").

Plaintiffs also allege that, in 2006 and 2007, the MDA issued a Premises Identification Number (PIN) to some of the plaintiff Farmers, that the MDA registered the address of their premises in a database, and that the MDA refused to remove such data.  <u>See</u> Affidavit of Joe Golimbieski [# 34-12] ¶¶ 4-5; Affidavit of Robert Keyworth [# 34-14] ¶¶ 4-9.  Each State is the authority responsible for collecting and entering the records of producers located in the State into the premises registration database, and for deleting such records from the database.  <u>See</u> <u>Zanoni v. USDA</u>, C.A. No. 8-939, Mem. Op. (D.D.C. March 31, 2009) (a copy of which is attached hereto as Exhibit A) at 2-3.[1]  Plaintiffs' claim of harm is thus based on actions taken by the MDA in Michigan.  <u>See</u> Pl. Opp. at 16-17 (identifying "the requirements for the use of PINs" as "specific governmental actions" that have caused harm to plaintiffs).

---

[1] In <u>Zanoni</u>, the Court dismissed the claims brought by a director of plaintiff the Farm-to-Consumer Legal Defense Fund, seeking records from the USDA under the Freedom of Information Act.  Mem. Op. (Exh. A) at 1-2, 18.  Plaintiffs cannot revisit these issues here.  <u>See</u> Pl. Opp. at 3 (asserting that the USDA failed to produce documents in response to FOIA requests); Declaration of Judith McGeary [# 34-4] ¶¶ 3-5 (same allegation).

Plaintiffs do not dispute that these requirements regarding the use of RFID devices and the issuance of PIN numbers in Michigan were imposed, and these acts were committed, by the MDA. See Pl. Opp. at 26 ("Michigan has implemented mandatory premises registration and RFID tagging for cattle"); see also Declaration of Andrew Schneider at 1, 3 (The MDA "forced mandatory [RFID] . . . tagging for all cattle in Michigan starting March 1, 2007 . . . [and] also requires that each farm have a premises ID number in order to obtain tags."). Plaintiffs' alleged injuries are thus fairly traceable to the MDA's conduct.

**B.** **Plaintiffs' Factual Allegations Are Insufficient to Establish that their Alleged Injuries Are Fairly Traceable to the USDA.**

In ruling on the USDA's Motion to Dismiss, the Court should disregard plaintiffs' legal conclusions cast as factual allegations or inferences unsupported by the factual allegations. See Nat'l Treas. Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996). Plaintiffs' "bald allegation of standing is not enough to survive" the Motion to Dismiss, where neither the factual allegations nor their logic establish the elements of standing. See Renal Physicians Ass'n v. HHS, 489 F.3d 1267, 1278 (D.C. Cir. 2007) (citation omitted). Because plaintiffs' standing is not "self-evident," they must "supplement the record to the extent necessary to explain and substantiate" their entitlement to judicial review. Sierra Club v. EPA, 292 F.3d 805, 900 (D.C. Cir. 2002). As discussed below, plaintiffs fail to meet this requirement.

1.     Plaintiffs Have Not Demonstrated that the July 2007 Final Rule Requires the Use of RFID Tags or PINs in Michigan.

Plaintiffs assert, without evidentiary support, that their alleged injuries were caused by rules issued by the USDA in connection with its development of the NAIS.  See Pl. Opp. at 19-20, 31-32.  The USDA issued an interim rule in November 2004, and a final rule in July 2007, amending its regulations to recognize the NAIS identification format as additional numbering systems for animals in interstate commerce and the premises where they are held.  69 Fed. Reg. 64644 (Nov. 8, 2004); 72 Fed. Reg. 39301 (July 18, 2007).  Although plaintiffs assert that these interim and final rules "authorized" the MDA to require the use of RFID tags and to issue PINs in Michigan, see Pl. Opp. at 31, there is nothing in the record establishing that the USDA mandated the use of these means of identification in Michigan.  Id. at 19-20.

On the contrary, although the NAIS working group for cattle recommended the use of RFID tags as a preferred form of identification for cattle, see Declaration of John Clifford dated October 1, 2008 (Clifford Decl.) [# 12] ¶¶ 24, 26, and the USDA encourages the use of RFID tags for cattle, the USDA has not required the use of such tags for cattle that remain within a State.  See Declaration of Reed Macarty dated November 13, 2008 (Macarty Decl.) [# 12] ¶ 39.  The NAIS is technology-neutral, see 69 Fed. Reg. 69 Fed. Reg. 35575, 35576 (June 25, 2004), and, to date, the USDA has approved more than 20 devices, including both visual-only eartags and RFID eartags, for use in the NAIS.  See Pl. Opp. at 4; Clifford Decl. ¶ 25.  Thus, the July 2007 final rule does not mandate the use of RFID tags for animal identification purposes, and does not prevent the MDA from granting a religious exemption to any such requirement that the MDA imposed in Michigan.  See 72 Fed. Reg. 39301; Clifford Decl. ¶¶ 31, 35, 36.  Indeed,

plaintiffs appear to concede that the USDA's July 2007 final rule does not require the use of RFID tags on cattle located in Michigan. See Pl. Opp. at 36. The fact that this final rule allows the MDA to require the use of RFID tags on cattle being moved within Michigan is insufficient to confer plaintiffs with standing to sue the USDA. See Systems Council EM-3 v. AT&T Corp., 159 F.3d 1376, 1381 (D.C. Cir. 1998) (recognizing that regulation that deems the use of certain assumptions reasonable "does not mandate" use of such assumptions, "but rather cites them as a 'safe harbor'").

Similarly, the July 2007 final rule does not require that farmers obtain a PIN for their Michigan premises. See Clifford Decl. ¶ 20. Under the NAIS, States and industry (through private systems) will manage the animal tracing databases that maintain the movement records of animals. Id. ¶¶ 19, 27, 29. Moreover, each State remains the authority responsible for collecting the records of producers located in the State and for deleting such records from the premises registration database. See Clifford Decl. ¶¶ 20, 31; Zanoni v. USDA, Mem. Op. at 2-3. Although plaintiffs allege harm resulting from the MDA's decisions to issue PINs to some of the plaintiff Farmers, and to deny their requests to remove their data, plaintiffs have not come forward with any evidence that these actions were mandated by the July 2007 final rule or any other action by the USDA.

        2.       Plaintiffs' Allegations Regarding the Relationship Between the MDA and the USDA Are Insufficient to Confer Plaintiffs with Standing to Sue the USDA.

Plaintiffs contend that, "even if the MDA is the immediate cause" of their alleged injury, they have standing to sue the USDA "because MDA's conduct has resulted from the relationship it has with USDA." See Pl. Opp. at 18. In particular, plaintiffs point to the funding sought or

obtained by the MDA from the USDA, and certain Memoranda of Understanding (MOUs) between these entities.  See id. at 18-19.  However, neither such funding nor the MOUs mandate the challenged actions by MDA.  These allegations are, therefore, insufficient to confer plaintiffs with standing to sue the USDA.

(a).    The Memoranda of Understanding

The first issue raised by plaintiffs as to causation is the series of MOUs that Michigan executed with the USDA regarding the administration of the TB Program in Michigan.  See Pl. Opp. at 12-14; Comp. ¶¶ 118, 142, 183.  Plaintiffs assert that the USDA, in reviewing Michigan's annual applications for split-State status in the TB Program, "place[d] significant regulatory pressure on MDA to implement [the] NAIS," see Comp. ¶ 178, and that "MDA would not be allowed to cause" plaintiffs' alleged injuries, absent the existence of the MOUs.  See Pl. Opp. at 18-19.

Plaintiffs misconstrue the MOUs.  In order to carry out its operations, the USDA is authorized to cooperate with States, 7 U.S.C. § 8310, and to make grants and enter into contracts and agreements with States.  Id. § 8312.  A State that is cooperating with the USDA is responsible for carrying out the operations or measures on all property within the State.

Under the TB Program, the USDA evaluates the TB status of each State or zone on an annual basis to ensure the continued control and eradication of tuberculosis.  9 C.F.R. § 77.4(b); Macarty Decl. ¶¶ 12-15.  Under these regulations, a State is classified according to the prevalence of bovine tuberculosis within its borders.  See 9 C.F.R. §§ 77.3 - 77.15.  That classification determines the level of restrictions that apply to the interstate movement of cattle from that State, including animal identification requirements.  Id., §§ 77.8 -77.16.  A State may

request that a particular zone be given a different TB classification than the rest of the State ("split-State" classification), such that interstate movement of cattle from that zone may be subject to lesser restrictions than apply to cattle in the other parts of the State.  Id. § 77.4.  The USDA may grant such a request only if the State has imposed restrictions on the intrastate movement of cattle that are substantially the same as the restrictions imposed by the USDA for interstate movement.  Id. § 77.3(b); see also Macarty Decl. ¶ 13.  In order to receive and retain split-State status, a State must enter into an MOU with the USDA.  9 C.F.R. § 77.4.

After Michigan's accredited-free status in the TB Program was suspended in 1998 due to detections of tuberculosis in affected cattle herds that had been exposed to tuberculosis-infected wildlife, the MDA entered into MOUs with the USDA on various dates from 2002 to 2007.  Macarty Decl. ¶¶ 12-15, 31, 36.  The MOUs provide that the MDA "is responsible for establishing methods to regulate and monitor cattle movement between zones within the State."  Macarty Decl. ¶ 31 & Exh. A (2007 MOU) at 1.  Under the TB Program, it is therefore the MDA that imposed requirements regarding the use of RFID tags for cattle being moved from one location to another within Michigan.  See Kirk Aff. ¶ 4-10, 14.

The record establishes that the MDA exercised its independent judgment in making these decisions.  Although plaintiffs contend that "MDA is being forced to implement NAIS in the State of Michigan," see Pl. Opp. at 13, the MDA stated that it is promoting the NAIS in Michigan because the MDA "believes it to be an effective tool for animal disease control and eradication."  Kirk Aff. ¶ 14.  According to the MDA, "[t]he major reason MDA moved from manual identification (manual tags) to electronic means of identifying animals as part of its TB eradication program is improved accuracy of data."  Id. ¶ 5.

In 2001, the MDA "first implemented the use of electronic identification ear tags to monitor cattle movement within the Northern Michigan TB infected zone." Kirk Aff. ¶ 6. In 2004, the MDA decided to order RFID tags "not because of any influence by the USDA, but because of favorable results from prior use of electronic ear tags," including "[t]he accuracy of the data and improved speed and ease of traceability." Id. ¶ 8; see also Declaration of Michael Vanderklok dated April 22, 2009 (Vanderklok Decl.) [# 37-2] ¶¶ 4, 5. Likewise, in 2007, the MDA decided "to identify all cattle with NAIS compliant RFID ear tags . . . not because of any influence of the USDA," but instead because the MDA "could see the real benefits of accurate data in the database for tracking animals and the labor and time savings." Kirk Aff. ¶ 10. Prior to issuing the 2007 order, the MDA "sought advice and consultation from the livestock industry, veterinary specialists, and staff at Michigan State University." Id. ¶ 12. The MDA also published notice of the proposed order, received written public comments on it, held formal public hearings, and revised the order based on such comments. Id.

Because the MDA first implemented the use of RFID tags to monitor cattle movement within the Northern Michigan TB infected zone in 2001, see Kirk Aff. ¶ 6, and the MDA decided to extend the use of such tags in Michigan thereafter, id. ¶¶ 8, 10, plaintiffs lack a factual basis to support their contention that the USDA, by entering into the MOUs in 2002, 2005, and 2007, required the use of RFID tags on cattle located in Michigan. See Pl. Opp. at 13-14, 36. The references in these MOUs to the MDA's use of official identification, including RFID tags, for cattle in Michigan are acknowledgments that the steps taken by Michigan satisfied the USDA's criteria for split-State status under the TB Program.[2]

_____

    [2] A provision in the 2005 MOU refers to "Requiring electronic identification and a movement permit for any cattle moved from Premises in the Modified Accredited Zone." See

The MDA's orders and decisions regarding the use of RFID tags on cattle located in Michigan, as reflected in the MOUs, are independent acts, such that plaintiffs' alleged injury is not fairly traceable to the USDA's conduct. See Fulani v. Brady, 935 F.2d 1324, 1329 (D.C. Cir. 1991) ("an injury will not be 'fairly traceable' to the defendants' challenged conduct . . . where the injury depends not only on that conduct, but on independent intervening or additional causal factors"); City of Detroit v. Franklin, 4 F.3d 1367, 1373 (6th Cir. 1993) (plaintiffs lacked standing where there were "independent act[s] breaking the chain of causation between the challenged actions . . . and the injury to the plaintiffs"). Similarly, to the extent that plaintiffs' claims involve the MDA's religious exemption to its requirements regarding the use of RFID tags, such decisions are made by the MDA. See Kirk Aff. ¶ 13; see also Pub. Util. Dist. No. 1 v. FERC, 272 F.3d 607, 616-17 (D.C. Cir. 2001) (plaintiff's ability to opt out of the challenged regime renders alleged injuries non-existent or highly speculative). Plaintiffs' factual allegations regarding the MOUs are therefore insufficient to establish that the MDA's decisions to require the use of RFID tags and to issue PINs to Michigan farmers are fairly traceable to the USDA.

(b).     The Funding Sought by the MDA from the USDA

The second issue raised by plaintiffs as to causation is the funding sought or obtained by the MDA from the USDA. See Pl. Opp. at 14. Although plaintiffs assert that the USDA is "using federal funds to coerce MDA to implement NAIS in the State of Michigan," id., and that "MDA would not be allowed to cause" their alleged injuries absent the receipt of grants from the USDA, id. at 18-19, these factual allegations are insufficient to establish standing. Plaintiffs

---

Pl. Op. at 13. This provision merely reflects the MDA's independent decision to use this method of tracking cattle in this zone, and the USDA's determination that the use of this method (along with other steps agreed to by the MDA) was adequate to continue split-State status.

allege that "MDA submitted a proposal to receive a grant of $179,000 from USDA" in 2006. Id. at 14 & Exh. S (grant proposal) [34-20]. Plaintiffs also assert that the MDA, in applying for such funding, stated that the funds would be used by the MDA to implement and administer premises registration in Michigan in accordance with the NAIS. Id.

The facts alleged by plaintiffs do not substantiate their claim of coercion. Although plaintiffs contend that "MDA is being forced to implement NAIS in the State of Michigan," see Pl. Opp. at 13, the MDA stated that it is promoting the NAIS in Michigan because the MDA "believes it to be an effective tool for animal disease control and eradication." Kirk Aff. ¶ 14. In addition, the MDA stated that, although it received grant funds from the USDA, such funds "are not sufficient" for the MDA to administer its bovine TB program, and that "[t]he majority of MDA's funding" for that program is allocated by the Michigan Legislature and is not received through grants from USDA." Id. ¶ 11. Neither the MDA's application for or receipt of such funds is evidence of coercion.

Plaintiffs' factual allegations regarding such funds are insufficient to establish that plaintiffs have standing to assert their claims against the USDA. Where plaintiffs challenge actions taken by the MDA, the MDA's receipt of funds from the USDA does not confer plaintiff with standing to sue the USDA. See Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 42-43 (1976) (although plaintiffs alleged that an IRS decision to grant tax-exempt status "encouraged" a hospital not to provide them treatment, the alleged injury was not "fairly traceable" to the IRS). Plaintiffs' alleged injuries are not "fairly traceable" to the USDA's grant of funds, where the injuries depend "on independent intervening or additional causal factors," namely the MDA's decisions to require the use of RFID tags on cattle being moved within

Michigan, to grant a religious exemption that allows farmers to apply such tags at the market, and to enter the farmers' addresses in a database.  See Fulani v. Brady, 935 F.2d at 1329. Plaintiffs lack standing to sue the USDA because the MDA's decisions are "independent act[s] breaking the chain of causation" between the USDA's actions "and the injury to the plaintiffs." See City of Detroit v. Franklin, 4 F.3d at 1373.

>    3.    Plaintiffs' Allegations Regarding the VS Memorandum Are Insufficient to Confer Plaintiffs with Standing to Sue the USDA.

Plaintiffs' allegations regarding the VS Memorandum issued by the USDA in 2008 to develop aspects of the NAIS, see Pl. Opp. at 18-19; Pl. Opp. to MDA's Motion to Dismiss at 9-11, are insufficient to confer plaintiff s with standing to assert their claims against the USDA.

The USDA issued VS Memorandum 575.19 on September 22, 2008, which was superseded by a modified version on December 22, 2008, in order to provide guidance to USDA employees regarding the use of PINs in the administration of Federal and State animal disease programs.  See Second Clifford Decl. [# 29-2] ¶¶ 6-11 & Exhs. A, B.

This VS Memorandum does not require farmers (producers) to register their premises in the NAIS database, and it reaffirms that the "opt-out" procedures would remain available for those farmers whose information was added to the NAIS database.  See Second Clifford Decl. ¶¶ 8, 10, 11 & Exhs. A, B.  While the VS Memorandum calls for USDA employees involved in such programs to identify locations involved in such programs with a standardized PIN when a PIN is assigned, a State or a farmer could continue to use either the standardized PIN or the State PIN.  Id.  And, to the extent that plaintiffs' claims involve a Farmer's request that the MDA delete information from the premises registration database, decisions on such opt-out requests are made by the MDA.  Id. ¶¶ 10, 11.  Each State remains the authority for collecting the records

of farmers located in the State from the premises registration database. <u>Id.</u>; <u>see generally</u> <u>Zanoni v. USDA</u>, Mem. Op. (Exh. A) at 2-3. Thus, the MDA is responsible for determining whether a farmer in Michigan may opt out of the premises registration regime. <u>See</u> <u>Pub. Util. Dist. No. 1 v. FERC</u>, 272 F.3d at 616-17.

Because plaintiffs allege that the MDA issued PINs to some of the plaintiff Farmers in 2006 and 2007, <u>see</u> Pl. Opp. at 13-14, 31-32; Comp. ¶¶ 31-35, 150, 169, plaintiffs cannot substantiate their contention that such alleged harm was caused by the USDA's subsequent issuance of the VS Memorandum in 2008. In addition, plaintiffs' alleged injury regarding the MDA's issuance of PINs to the Farmers in Michigan is not fairly traceable to the USDA's issuance of the VS Memorandum, because the injury depends on independent causal factors, namely the MDA's decision whether to issue such PINs. <u>See</u> <u>Fulani v. Brady</u>, 935 F.2d at 1329; <u>City of Detroit v. Franklin</u>, 4 F.3d at 1373.

For these reasons, plaintiffs' factual allegations regarding the USDA's issuance of the VS Memorandum are insufficient to confer them with standing to sue the USDA. The same point applies with respect to plaintiffs' allegations regarding other guidance documents issued by the USDA to develop aspects of the NAIS. In addition, although plaintiffs refers to various other guidance documents issued by the USDA, <u>see</u>, <u>e.g.</u>, Pl. Opp. at 31-32, plaintiffs do not establish that any such documents require the plaintiff Farmers to use RFID tags on cattle located in Michigan, or to receive a PIN, or that the issuance of such documents caused any of their alleged injuries.

Plaintiffs fail to establish a factual basis for their contention that the VS Memorandum or any other documents issued by the USDA to develop aspects of the NAIS exceed the limits of its statutory authority. See Pl. Opp. at 9-12, 34-38; Comp. ¶¶ 221-276, 289-337. In making this contention, plaintiffs err in assuming that the USDA regulates the identification of cattle located in Michigan.

Under the Animal Health Protection Act (AHPA), 7 U.S.C. §§ 8301-8321, the USDA "may prohibit or restrict the movement in interstate commerce of any animal" if the USDA "determines that the prohibition or restriction is necessary to prevent the introduction or dissemination of any pest or disease of livestock." See 7 U.S.C. § 8305(1). The USDA is also authorized to issue such regulations and orders as the Secretary determines are necessary. Id. ¶ 8312. Pursuant to this statutory authority, the USDA promulgated the TB regulations governing the *interstate* transportation of cattle and captive cervids, for the purpose of controlling the spread of bovine TB. See, e.g., 9 C.F.R. §§ 77.1(a), 77.8 - 77.18; see also Macarty Decl. ¶¶ 10, 15, 39.

Contrary to plaintiffs' contention, neither the TB regulations issued by the USDA nor any rules or guidance documents issued by the USDA to develop aspects of the NAIS govern the intrastate movement of cattle in Michigan. The July 2007 final rule promulgated by the USDA amended these TB regulations to allow for the use of the NAIS formats as an acceptable means of animal identification under these rules, and thus falls within the USDA's statutory authority. Similarly, the MOUs provide that the MDA "is responsible for establishing methods to regulate and monitor cattle movement between zones within the State." Macarty Decl. ¶ 31 & Exh. A (2007 MOU) at 1. As part of the TB Program, the MDA made an independent decision to issue

the March 2007 order requiring the use of RFID tags on cattle being moved within Michigan.

See Kirk Aff. ¶¶ 4-10, 14; see also Vanderklok Decl. ¶¶ 4, 5.

## II.     PLAINTIFFS LACK STANDING TO ASSERT THEIR CLAIMS AGAINST THE USDA, BECAUSE THEIR ALLEGED INJURIES WOULD NOT BE REDRESSED BY THE RELIEF THEY SEEK.

Plaintiffs also lack standing to assert their claims against the USDA because "it is not likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" on such claims.  See Lujan v. Defenders of Wildlife, 504 U.S. at 561.  As a result, plaintiffs' claims against the USDA must be dismissed.  See US Ecology v. Dep't of Interior, 231 F.3d 20, 24-25 (D.C. Cir. 2000); Wilderness Soc'y v. Norton, 434 F.3d 584, 590 (D.C. Cir. 2006).

As discussed above, plaintiffs' claims against the USDA implicate the order issued by the MDA in 2007 regarding the required use of RFID tags for cattle being moved within Michigan, the religious exemption granted by the MDA to Michigan farmers from this requirement, and the MDA's issuance of PINs to Michigan farmers.  Even if the Court were to invalidate aspects of the NAIS, or to enjoin the USDA from implementing aspects of the NAIS, any such court order would not require the MDA to revoke its 2007 order, alter the scope of the MDA's religious exemption, or remove data of the plaintiff Farmers from the premises database.  The record establishes that the MDA exercised its independent judgment in issuing orders regarding the use of RFID tags for cattle located in Michigan.  In 2007, the MDA decided "to identify all cattle with NAIS compliant RFID ear tags . . . not because of any influence of the USDA," but instead because the MDA "could see the real benefits of accurate data in the database for tracking animals and the labor and time savings."  Kirk Aff. ¶ 10; see also Vanderklok Decl. ¶¶ 4, 5.

Accordingly, even if plaintiffs' alleged injury were fairly traceable to the USDA, and even if plaintiffs could succeed on their claims against the USDA (which is denied), any such relief would not prevent Michigan from causing the harm alleged by plaintiffs.  See Florida Audubon Soc'y v. Bentsen, 94 F.3d 658, 663-664 (D.C. Cir. 1996) (en banc) (redressability element of standing examines "whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiffs").  The impact of any relief granted to plaintiffs on their claims against the USDA is, therefore, necessarily "speculative," and plaintiffs' conjecture is thus insufficient to confer them with standing to assert their claims against the USDA.  See Lujan v. Defenders of Wildlife, 504 U.S. at 561; see also Renal Physicians Ass'n v. HHS, 489 F.3d at 1277-78; Fulani v. Brady, 935 F.2d at 1329 ("an injury will not be . . . 'redressable' where the injury depends not only on [the defendant's challenged conduct], but on independent intervening or additional causal factors"); Atlantic Urological Assoc. v. Leavitt, 549 F. Supp. 2d 20, 28 (D.D.C. 2008) (plaintiffs cannot demonstrate that the final order caused them an injury likely to be redressed by a favorable decision).

As a result, the Court should dismiss each claim against the USDA.

## III. PLAINTIFFS FAIL TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED.

 Because plaintiffs' alleged injuries are not fairly traceable to the USDA's conduct, plaintiffs not only lack standing to assert their claims against the USDA, as discussed above, but also fail to state claims upon which relief can be granted under the notice-and-comment provisions of the Administrative Procedures Act (APA), 5 U.S.C. §§ 553; the procedural requirements of the Regulatory Flexibility Act (RFA), 5 U.S.C. § 603; the limits of the USDA's

statutory authority; the National Environmental Policy Act (NEPA), 40 C.F.R. § 1501.4, and

7 C.F.R. § 1b2(a); the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb et seq.;

and the Farmers' due-process rights.

**A.      Plaintiffs Fail to State a Claim upon which Relief Can be Granted Under the APA's Notice-and-Comment Provisions.**

Plaintiffs fail to state a claim upon which relief can be granted against the USDA under

the APA's notice-and-comment provisions, 5 U.S.C. §§ 553(b), (c).  See Pl. Opp. at 19-28.

Because plaintiffs do not dispute that the "USDA adopted with minor changes the 2004 interim

rule as a final rule," see Comp. ¶ 55, see also Pl. Opp. at 44, the USDA complied with the APA's

notice-and-comment provisions with respect to issuance of the July 2007 final rule.  See 69 Fed.

Reg. 64644 (Nov. 8, 2004); 72 Fed. Reg. 39301 (July 18, 2007).

Plaintiffs fail to establish that any of the guidance documents issued by the USDA after

the July 2007 final rule, including the VS Memorandum, constitutes a "substantive rule" that

should have undergone notice-and-comment procedures, see Pl. Opp. at 23-27, because such

guidance documents did not impose requirements on the plaintiff Farmers in Michigan.  As

discussed above, plaintiffs fail to substantiate their contention  that the USDA has mandated the

use of RFID tags on cattle in Michigan or the issuance of PINS to farmers in Michigan.

The Court should therefore dismiss plaintiffs' claim under the APA's notice-and-

comment provisions.

**B.      Plaintiffs Fail to State a Claim upon which Relief Can be Granted Under the Regulatory Flexibility Act.**

Plaintiffs fail to state a claim upon which relief can be granted under the Regulatory Flexibility Act, because they do not dispute that the USDA certified and published its conclusion that the July 2007 final rule would not likely have an adverse impact on small businesses. <u>See</u> Pl. Opp. at 29-31.

In issuing the interim rule on November 8, 2004, the USDA addressed the RFA's procedural requirements and the potential impacts of the rule on small businesses, which included beef and cattle producers with $750,000 or less in annual receipts under regulatory guidelines. 69 Fed. Reg. at 64647-48. The USDA expressly determined that, because use of the numbering system for animals and locations under the NAIS "is voluntary, no costs are imposed on participants and it is unlikely to have any adverse impact on small businesses." <u>Id</u>. at 64648. The USDA published this conclusion in the Federal Register, provided a factual basis for this certification, and affirmed the certification in the final rule issued on July 18, 2007. <u>Id</u>. at 64647-48; 72 Fed. Reg. at 39304. As a result of this certification, the USDA was not required to conduct a Regulatory Flexibility Analysis for the November 2004 interim rule or the July 2007 final rule. <u>See</u> 5 U.S.C. § 605(b) (explaining that certification eliminates requirement to do analysis); <u>Cement Kiln Recycling Coal. v. EPA</u>, 255 F.3d 855, 869 (D.C. Cir. 2001).

Plaintiffs' reference to guidance documents issued by the USDA before or after the July 2007 final rule does not alter the analysis. <u>See</u> Pl. Opp. at 29-31. An agency is not required to anticipate, when it makes a certification under the RFA, the possible impact of future developments. The Court should therefore dismiss plaintiffs' claim under the RFA.

**C.** **Plaintiffs Fail to State a Claim upon which Relief Can be Granted Under the APA's Substantive Provisions.**

Plaintiffs fail to state a claim against the USDA upon which relief can be granted under the APA's substantive provisions, 5 U.S.C. §§ 701 et seq. A plaintiff seeking judicial review under those provisions must identify a "*particular* agency action" that causes it harm, and "cannot demand a general judicial review of the [agency's] day-to-day operations." See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 899 (1990) (emphasis added) (dismissing a claim that challenged the Bureau of Land Management's "land withdrawal review program"); see also Found. On Econ. Trends v. Lyng, 943 F.2d 79, 84-86 (D.C. Cir. 1991) (dismissing a claim that was directed to the USDA's "germplasm preservation program").

Because plaintiffs challenge the USDA's statutory authority to develop the NAIS system as a whole, see Pl. Opp. at 1-4, 36, 41, rather than identifying a particular agency action regarding the NAIS that is the source of their alleged injuries, plaintiffs thus fail to state a claim under the APA. See Lujan, 497 U.S. at 890-91, 899; Found. On Econ. Trends, 943 F.2d at 86-87; Coal. for Underground Expansion v. Mineta, 333 F.3d 193, 196 (D.C. Cir. 2003). As discussed above, plaintiffs do not substantiate their contention that the July 2007 final rule or any of the guidance documents issued by the USDA to develop aspects of the NAIS was targeted to the movement of livestock from one premises to another within Michigan.

To the extent that plaintiffs seek to challenge actions taken by the USDA in connection with Michigan's administration of the TB Program in that State, that program is separate from the NAIS system, and plaintiff's APA claim is directed to the USDA's development of the NAIS system. Comp. ¶¶ 260-62. As discussed above, the USDA clearly has authority to enter into the MOUs with Michigan under the TB Program, and in particular to review the conditions imposed

by the MDA on cattle being moved from the Modified Accredited Zone, to ensure that TB-infected cattle do not enter interstate commerce.

The Court should therefore dismiss plaintiffs' APA claim.

### D.     Plaintiffs Fail to State a Claim Upon which Relief Can be Granted Under the National Environmental Policy Act.

To the extent that plaintiffs challenge the USDA's development of the NAIS system as a whole, see Pl. Opp. at 1-4, 36, 41, they fail to state a cognizable claim under NEPA.  As discussed in USDA's opening brief, plaintiffs in NEPA cases "must point to 'action' at least arguably triggering the agency's obligation to prepare an impact statement."  Found. On Econ. Trends v. Lyng, 943 F.2d at 85 (citation omitted).  When a plaintiff fails to identify a "particular agency action" that is the source of his or her alleged injuries, the claim does not involve a major Federal action under NEPA, or a final agency action under the APA's review provisions.  See id. at 85, 87; Coalition v. Mineta, 333 F.3d at 196, 197 n.7.

Here, the only particular agency action identified by Plaintiffs is the USDA's supposed mandate that plaintiff Farmers use RFID tags and PINs.  As discussed in detail above, there is no such mandate under the NAIS.  Because plaintiffs' alleged environmental injury results from independent decisions reached and actions taken by MDA, plaintiffs fail to state a claim upon which relief can be granted against the USDA under NEPA.[3]

The Court should therefore dismiss plaintiffs' claim against the USDA under NEPA.

---

[3]     Although plaintiffs refer to the MOUs executed by the MDA and the USDA and to associated documents, see Pl. Opp. at 41, these documents relate to the MDA's administration of the TB Program in Michigan, not to the USDA's development of the NAIS.  As a result, these documents do not support plaintiffs' NEPA claim against the USDA, which is based on the USDA's development of the NAIS.  In any event, as discussed above, the USDA has not mandated the use of RFID tags or the issuance of PINs to Michigan farmers in the TB Program.

**E.     Plaintiffs Fail to State a Claim Upon which Relief Can be Granted Under the Religious Freedom Restoration Act.**

Although plaintiffs assert that the actions that are infringing on their religious beliefs "are the actions of both USDA and MDA," see Pl. Opp. at 43, plaintiffs fail to substantiate this assertion.  As discussed above, plaintiffs cannot establish that any rule issued or action taken by the USDA either mandates the use of RFID tags on livestock located within Michigan, or prevents the MDA from granting appropriate religious exemptions to the MDA's requirements. In order to prevail under RFRA, plaintiffs must demonstrate that the USDA, and not the MDA, is "the source of what [they] contend is a substantial burden placed on the free exercise of religion."  Village of Bensenville v. FAA, 457 F.3d 52, 61 (D.C. Cir. 2006).  Plaintiffs cannot meet that burden, because the order upon which their claim is based, and the religious exemption to that order, were issued by the MDA.

Any burden on the exercise of religion allegedly caused by the MDA's orders is not "fairly attributable" to the USDA.  See Village of Bensenville, 457 F.3d at 57.  In this context, the Federal government's "[m]ere approval or acquiescence" in the initiatives of a private party or State government is insufficient to justify holding the Federal government responsible for that initiative under RFRA.  Id., 457 F.3d  at 57, 64.  As discussed above, the record establishes that the MDA exercised its independent judgment in issuing rules, as part of the TB Program, regarding the use of RFID tags for cattle being moved within Michigan.  With respect to plaintiffs' allegations regarding the MDA's application for funds from the USDA, see Pl. Opp. at 43, the receipt of public funds, "even of virtually all of an entity's funding, is not sufficient to fairly attribute the entity's actions to the government."  Id. at 64 (citations omitted).

The Court should therefore dismiss plaintiffs' claim against the USDA under RFRA.

**F.** **Plaintiffs Fail to State Due-Process Claims Upon which Relief Can be Granted.**

Because plaintiffs' due-process claims in Count Four largely restate the procedural and substantive claims under the APA in Counts One and Three, respectively, and plaintiffs do not raise any additional arguments, <u>see</u> Pl. Opp. at 43-45, the due-process claims are thus subject to the same defects as are the APA claims.

**CONCLUSION**

For all of these reasons, and those stated in the Memorandum in Support of the USDA's Motion to Dismiss, the Court should dismiss plaintiffs' claims against the USDA.

DATED: April 22, 2009                        MICHAEL F. HERTZ
                                                Deputy Assistant Attorney General

                                                JEFFREY A. TAYLOR
                                                United States Attorney

                                                JOHN R. GRIFFITHS
                                                Assistant Branch Director

                                                <u>*/s/ Peter T. Wechsler*</u>
                                                PETER T. WECHSLER (MA 550339)
                                                Trial Attorney
                                                United States Department of Justice
                                                Civil Division

                                                Federal Programs Branch
                                                20 Massachusetts Avenue, N.W.
                                                Washington, D.C. 20530
                                                Tel.: (202) 514-2705
                                                Fax: (202) 616-8470
                                                Email: peter.wechsler@usdoj.gov