UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FARM-TO-CONSUMER DEFENSE FUND et al., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| UNITED STATES DEPARTMENT OF AGRICULTURE and MICHIGAN DEPARTMENT OF AGRICULTURE, | ) ) ) ) |
| Defendants. | ) ) ) |

No. 08-CV-1546-RMC

## USDA'S SUR-REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Defendant the United States Department of Agriculture (USDA) hereby responds to issues raised in Plaintiffs' Sur-reply to the USDA's Motion to Dismiss the Amended Complaint.

### INTRODUCTION

The USDA filed a Motion to Dismiss on February 5, 2009 [Docket No. (#) 29]. Plaintiffs filed an Opposition on March 23, 2009 [# 35]. The USDA filed a Reply Memorandum on April 22, 2009 [# 38]. By minute order dated April 29, 2009, the Court granted each party leave to file a sur-reply "only on whether the issuance of a PIN [Premises Identification Number] is a USDA or state requirement." Plaintiffs filed a Sur-reply on May 6, 2009 [# 43].

As discussed below, the USDA has not required that Michigan farmers register their premises, or that farmers who receive PINs from a State use them in any aspect of their agricultural operations. As a result, plaintiffs' alleged injury regarding the issuance of PINs to Michigan farmers is not fairly traceable to the USDA. Furthermore, defendant the Michigan Department of Agriculture (the MDA) acted under State law in registering Michigan farmers'

premises. Plaintiffs' alleged injury therefore would not be redressed by the relief they seek from the USDA, because a court order on their claims against th USDA would not prevent the MDA from continuing to issue PINs to Michigan farmers under State law. For each of these reasons, plaintiffs lack standing to assert claims against the USDA regarding the issuance of PINs.

## ARGUMENT

**I.  BECAUSE THE USDA HAS NOT REQUIRED THAT PLAINTIFFS REGISTER THEIR PREMISES, THEIR ALLEGED INJURY REGARDING PINS ISSUED BY THE MDA IS NOT FAIRLY TRACEABLE TO THE USDA.**

Plaintiffs have not established facts to support their contention that the USDA "developed" a requirement that farmers receive PINs, and that the USDA "enforced" this requirement "across the country." See Plaintiffs' Sur-reply to the USDA's Motion to Dismiss (Pl. Sur-reply) at 5. Plaintiffs concede that the USDA's "formal regulations" do not require that farmers register their premises. Id. In particular, the final rule issued by the USDA in July 2007, amending its regulations to recognize the identification formats of the National Animal Identification System (NAIS) as additional numbering systems for animals in interstate commerce and the premises where they are held, 72 Fed. Reg. 39301 (July 18, 2007), does not require that farmers located in any State obtain a PIN for their premises. See Declaration of John Clifford dated October 1, 2008 (Clifford Decl.) [# 12] ¶ 20. While the USDA favors the use of NAIS-compatible identification formats, the USDA has not required that farmers register their premises, either in Michigan or "across the country," or that farmers who receive PINs from a State use them in any aspect of their agricultural operations. See Declaration of Reed Macarty dated November 12, 2008 (Macarty Decl.) [# 12], ¶ 19; Clifford Decl. ¶¶ 35, 36.

There is a wide variation among the States as to the percentage of producers' premises that are registered. For example, according to statistics on the USDA's premises registration web page, as of the end of April 2009, the rate of premises registration ranged from 2 percent in New Hampshire to 100 percent in Wisconsin. See Exhibit A hereto.[1] (The rate of registration is 76 percent in Michigan). This wide variation in rates refutes plaintiffs' contention that the USDA has mandated the issuance of PINs to all farmers "across the country." The USDA's premises registration web page also notes that participation in the NAIS is voluntary; that each State may have its own additional information requests, based on local needs, in order to issue a PIN; and that individual States may choose to keep premises registration voluntary or not, based on local needs. See Exhibit B hereto.[2]

Plaintiffs continue to misconstrue the Memoranda of Understanding (MOUs) between the USDA and the MDA from 2002 to 2007. See Pl. Sur-reply at 1-2 (asserting that the MOUs "have incorporated the PIN requirement in the State of Michigan"). In order to carry out its operations, the USDA is authorized to cooperate with States, 7 U.S.C. § 8310, and to make grants and enter into contracts and agreements with States. Id. § 8312. A State that is cooperating with the USDA is responsible for carrying out the operations or measures on all property within the State. Under the Bovine Tuberculosis Program, the USDA evaluates the TB status of each State or zone on an annual basis to ensure the continued control and eradication of

---

[1] http://animalid.aphis.usda.gov/nais/premises_id/update.shtml.

[2] http://animalid.aphis.usda.gov/nais/naislibrary/documents/factsheets_brochures/Premises_Registration-color.pdf.

tuberculosis. 9 C.F.R. § 77.4(b); Macarty Decl. ¶¶ 12-15. In order to receive and retain split-State status, a State must enter into an MOU with the USDA. 9 C.F.R. § 77.4. Thus, as the MDA stated, the 2002 MOU "was "not a federal mandate, but simply an acknowledgment of conditions existing in Michigan that would satisfy USDA eligibility for split-state tuberculosis status." MDA's Reply to Plaintiffs' Opposition to MDA's Motion to Dismiss (MDA's Reply Memo.) [# 37] at 9. The MOUs "were more a reflection of what the MDA was implementing to control bovine tuberculosis than a USDA mandate." Id. The conditions in the MOUs were based on the MDA's authority under state law. See id. at 10.

Moreover, the plaintiff farmers do not contend that they requested that the USDA delete premises data collected by the MDA. See, e.g., Affidavit of Robert Keyworth (Keyworth Aff.) [# 34-14] ¶¶ 7-8 (the MDA refused to remove data regarding the address of his premises). Under the procedures developed by the USDA in 2007 for producers who wish to have their premises records removed from the NAIS information system, each State remains the authority responsible for collecting the records of producers located in the State, and for deleting such records from the premises registration database. See Clifford Decl. ¶¶ 20, 31; Declaration of John Clifford dated February 2, 2009 (Second Clifford Decl.) [# 29-3] ¶ 11; see generally Zanoni v. USDA, C.A. No. 8-939, Mem. Op. (D.D.C. March 31, 2009) at 2-3.

The VS Memorandum issued by the USDA on September 22, 2008, which was superseded by a modified version on December 22, 2008, see Pl. Sur-reply at 7-8, also does not require producers to register their premises in the NAIS database, and it reaffirms that the opt-out procedures would remain available for those producers and premises owners whose information was added to the NAIS database. VS Memorandum 575.19; see Second Clifford

4

Decl. ¶¶ 8, 10, 11 & Exhibits A, B. While the VS Memorandum calls for USDA employees involved in such programs to identify locations involved in such programs with a standardized PIN when a PIN is assigned, a State or a farmer could continue to use either the standardized PIN or the State PIN. Id.

In short, the USDA did not require that Michigan farmers receive PINs. Plaintiffs' alleged injury therefore is not fairly traceable to the USDA, because the injury depends on independent causal factors, namely the MDA's decisions whether to issue such PINs. See Fulani v. Brady, 935 F.2d 1324, 1329 (D.C. Cir. 1991) ("an injury will not be 'fairly traceable' to the defendants' challenged conduct . . . where the injury depends not only on that conduct, but on independent intervening or additional causal factors"). As a result, plaintiffs lack standing to assert claims against the USDA regarding the issuance of PINs.

## II. BECAUSE THE MDA ACTED UNDER STATE LAW IN ISSUING PINS, PLAINTIFFS' ALLEGED INJURY WOULD NOT BE REDRESSED BY THE RELIEF THE SEEK FROM THE USDA.

The MDA states that it acted under State law in providing Michigan farmers with electronic radio-frequency identification devices (RFID tags) for their cattle, and in registering their premises. See Memorandum in Support of MDA's Motion to Dismiss (MDA's Memo.) [# 31-2] at 4-5, 26-27 (citing Michigan's Animal Industry Act, Mich. Comp. Laws §§ 287.701 et seq.); MDA's Reply Memo. at 4-6 (citing same). The MDA explains that it "has been requiring the identification of farm animals and premises for years as part of its disease eradication efforts." Affidavit of Kevin Kirk dated February 17, 2009 (Kirk Aff.) [# 31-3] ¶ 4; see also MDA's Reply Memo. at 11 (the MDA "has long been establishing premises identification codes" for farms where cattle are being tested for tuberculosis). The MDA "has been using

5

animal and premises identification codes in its bovine tuberculosis program long before transitioning into the NAIS identification formats for animals and premises." Kirk Aff. ¶ 4. The MDA issued PINs for those farm premises involved in Michigan's Bovine Tuberculosis Program prior to the development of the NAIS numbering formats. Id. ¶ 6.

After the USDA began to develop the NAIS as a voluntary, nationwide Federal-State-Industry initiative, the MDA converted to the use of NAIS-compatible numbering formats for the RFID tags and PINs that were issued by the MDA to Michigan farmers. See Declaration of Kevin Kirk dated April 20, 2009 (Second Kirk Decl.) [# 37-2] ¶¶ 2-5; MDA's Reply Memo. at 8, 11. Under the USDA's regulations, States determine the manner in which the defined data elements for premises registration are collected and entered, and each State may also impose its own additional information requirements for premises registration. See Clifford Decl. ¶ 20.

Each PIN issued by the MDA to a Michigan farmer contains a specific seven-digit alphanumeric code. See Second Kirk Dec. ¶ 5 & Ex. A at 1 (listing the 7-digit identification code for Mr. Keyworth's premises); MDA's Reply Memo. at 8 (discussing same). As plaintiffs note, see Pl. Sur-reply at 4-5, the MDA releases a seven-digit code for a Michigan farmer's premises by accessing a "premises number allocator," a software application that is maintained by the USDA. See Second Clifford Decl. ¶ 9. The purpose of using the allocator is to ensure that each producer's premises are issued a unique identification number, and to establish the compatibility of systems and databases across the country. Id. ¶¶ 3-5, 9; Macarty Decl. ¶ 18. Plaintiffs overstate the USDA's role. See Pl. Sur-reply at 5 (asserting that the PIN for Michigan farmers' premises is "generated by USDA"). The MDA collects the information regarding the premises of Michigan farmers and issues the PINs to the farmers. While the USDA encourages

6

States to convert to the use of NAIS-compatible numbering formats for PINs, Federal law does not require the MDA to issue PINs.

Although plaintiffs contend that Michigan farmers must receive a PIN in order to obtain RFID tags for use on their cattle prior to movement within Michigan, see Pl. Sur-reply at 5, plaintiffs do not dispute that it was the MDA, rather than the USDA, that required the use of RFID tags and issued the PINs. See Pl. Sur-reply at 2 (the MDA "collected and transmitted" data from Michigan farmers regarding the identification of their premises); see also Declaration of Andrew Schneider (Schneider Decl.) [# 34-16] at 1, 3 (The MDA "forced mandatory [RFID] . . . tagging for all cattle in Michigan," and "requires that each farm have a premises ID number in order to obtain [RFID] tags"); Affidavit of Joe Golimbieski (Golimbieski Aff.) [# 34-12] ¶¶ 4-5 (the MDA issued him a PIN and a premises registration card); Keyworth Aff. ¶¶ 4-5 (same). Plaintiffs thus lack a factual basis to assert that the issuance of PINs to Michigan farmers was mandated by Federal law.

Because Michigan acted under State law, and could continue to act under State law, in issuing PINs to Michigan farmers, plaintiffs' alleged injury would not be redressed even if they were to prevail on their claims against the USDA. Accordingly, plaintiffs lack standing to bring these claims. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (finding no standing where "it is not likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" on such claims); Renal Physicians Ass'n v. HHS, 489 F.3d 1267, 1277-78 (D.C. Cir. 2007); Fulani v. Brady, 935 F.2d at 1329 ("an injury will not be . . . 'redressable' where the injury depends not only on [the defendant's challenged conduct], but on independent intervening or additional causal factors"); Atlantic Urological Assoc. v. Leavitt, 549 F. Supp. 2d

7

20, 28 (D.D.C. 2008) (plaintiffs cannot demonstrate that the final order caused them an injury likely to be redressed by a favorable decision). As a result, plaintiffs' claims against the USDA regarding PINs must be dismissed. See Wilderness Soc'y v. Norton, 434 F.3d 584, 590 (D.C. Cir. 2006); US Ecology v. Dep't of Interior, 231 F.3d 20, 24-25 (D.C. Cir. 2000).

## CONCLUSION

For these reasons, and those stated in the memoranda previously filed by the USDA, the Court should dismiss each of plaintiffs' claims against the USDA.

Dated: May 13, 2009

Respectfully Submitted:

MICHAEL F. HERTZ
Deputy Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

JOHN R. GRIFFITHS
Assistant Branch Director

*/s/ Peter T. Wechsler*
PETER T. WECHSLER (MA 550339)
Trial Attorney
United States Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Tel.: (202) 514-2705
Fax: (202) 616-8470
Email: peter.wechsler@usdoj.gov