UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FARM-TO-CONSUMER LEGAL DEFENSE FUND, *et al.*, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Civil Action No. 08-1546 (RMC) |
| TOM VILSACK, Secretary, U.S. DEPARTMENT OF AGRICULTURE,[1] *et al.*, | ) ) ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM OPINION

Plaintiffs sue the Secretary of the U.S. Department of Agriculture ("USDA") and the Director of the Michigan Department of Agriculture ("MDA") seeking to enjoin the implementation and enforcement of the National Animal Identification System ("NAIS"). Plaintiffs object to MDA's transition from the unique state-created animal and premises identification system to the nationally uniform NAIS. Before the Court are USDA's motion to dismiss and MDA's motion to dismiss and/or for summary judgment. For the reasons explained herein, the Court will grant USDA's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), and will grant MDA's motion for summary judgment under Federal Rule of Civil Procedure 56.

### I. FACTS

The individual Plaintiffs are farmers who raise livestock in a sustainable manner, all but one of whom live in Michigan. The lead Plaintiff is an advocacy group of which each individual

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Tom Vilsack is substituted as Secretary for his predecessor, Ed Schafer, Secretary of the U.S. Department of Agriculture.

Plaintiff is a member. They complain that USDA is "destroying their pleasant agricultural way of life" by developing the NAIS. Pls.' Opp'n to USDA's Mot. to Dismiss at 6. Plaintiffs assert that NAIS requires Premises Identification Numbers ("PINs") for each of their farms and radio frequency identification devices ("RFIDs")[2] for each of their cattle, both of which result in the collection of information into a huge national database against their wills and in violation of their religious beliefs.[3] Because the MDA has adopted the NAIS format to identify individual cattle, imposes PINs on their farms, and requires RFID tags when cattle are moved intrastate to market or slaughter, Plaintiffs complain that it is complicit with USDA and also violating their rights.

### A. The National Animal Identification System

Commencing in 2003, USDA has taken steps to develop the NAIS, a Federal-State-Industry initiative that is designed to trace animals so that those associated with an incident of a livestock disease such as bovine tuberculosis ("TB") can be identified and the disease contained. *See* 69 Fed. Reg. 35,575 (June 25, 2004). USDA issued an interim rule in November 2004 and a final rule in July 2007, amending its regulations to recognize the NAIS identification format as an

---

[2] An RFID tag is an object that can be applied to or incorporated into a product, animal, or person for the purpose of identification and tracking using radio waves.

[3] Plaintiffs' religious beliefs include the belief that they are "endowed by their Creator with dominion and control over all the animals on earth." Pls.' Opp'n to MDA's Mot. to Dismiss and/or for Summ. J. at 15. This religious tenet assertedly is violated by NAIS "because dominion and control has now been transferred to USDA and MDA." *Id.* Further, Plaintiffs believe "they are not allowed to take 'the mark' of NAIS" and that the imposition of PINs and RFIDs causes them to violate this tenet of their religion as well. *Id.* Plaintiffs Glen Mast and Robert Alexander, who are Old Order Amish, allege further injury: "one tenet of their beliefs is that they must be farmers, yet the cost of complying with NAIS is prohibitive and may force these two Plaintiffs to quit farming altogether." *Id.* Additionally, their religious beliefs eschew technology, directly contrary to the use of RFIDs, scanners and computer programs, and discourage them from outside contact, yet their private data is stored in a national database. *See id.*

additional numbering system to identify animals in interstate commerce and the premises where they are held. *See* 69 Fed. Reg. 64,644 (Nov. 8, 2004); 72 Fed. Reg. 39,301 (July 18, 2007). Conceptually at least, NAIS is intended to identify with particularity all livestock and poultry entering the food chain through interstate commerce and the farms from which they came. Plaintiffs are alarmed by such a gargantuan collection of personal information about themselves and their livelihoods. *See* 1st Am. Compl. ¶ 46 ("In the 2004 interim rule, USDA recognized the massive scope of NAIS, acknowledging the presence of over one million cattle producers and 95 million beef and dairy cattle in the United States, not including hogs, sheep, poultry and other domestic animals, which would 'need to be identified if the NAIS were to be fully implemented.'"). Each of the individual Plaintiffs "ha[s] either already decided that complying with NAIS is too costly and thus [they] will have to quit farming altogether, that it infringes on their personal freedoms and invades their privacy, or that the NAIS program violates their religious freedoms and beliefs." *Id.* ¶ 3.

NAIS has three components: (1) premises identification (locations that manage or hold animals), which constitutes a unique seven-character identifier; (2) animal identification (either individually or with a group/lot number), which associates an animal with a premises and gives its birthplace; and (3) animal tracking, so that as an animal moves from one to another premises, its individual number will be associated with the new premises identification number. The Animal and Plant Health Inspection Service, a component agency of USDA, administers the Animal Health and Protection Act, 7 U.S.C. § 8301 *et seq.*, which empowers the Secretary of USDA to control interstate and foreign commerce in animals when necessary for the control of animal disease. It has developed NAIS as part of that effort. Neither the regulations issued by USDA nor any rules or guidance documents issued by USDA to develop aspects of NAIS govern the intrastate movement of cattle.

Decisions to use NAIS compliant identifiers for the intrastate movement of cattle are made by the states.

### B. MDA Adoption of NAIS Format

Plaintiffs complain that USDA "is using the State of Michigan as a puppet to implement NAIS in Michigan under the guise of eradicating TB, a disease that is not being caused by animals on farms but rather is being caused by wildlife in Michigan." 1st Am. Compl. ¶ 58. MDA retorts that it has exercised its own discretion, over a period of years, to require animal identification and premises identification in an effort to eradicate bovine TB in the state, and independently decided to require PINs and RFID tags for cattle being moved within Michigan.

Michigan's Animal Industry Act, Mich. Comp. Laws § 287.701 *et seq.*, is similar to the federal law in that its purpose is "to protect the health, safety, and welfare of humans and animals." *Id.* § 287.701(2). Section 9(8) of that law authorizes the Director of the MDA to require the identification of animals and to control their movements intrastate:

> The director may develop, implement, and enforce scientifically based movement restrictions and requirements including official bovine tuberculosis test requirements, prior movement permits, official intrastate health certificates or animal movement certificates to accompany movement of animals, and official identification of animals for movement between or within a disease free zone, surveillance zone, and an infected zone, or any combination of those zones.

*Id.* § 287.709(8). The Act also requires that "[a]ll cattle, goats, sheep, and privately owned cervids [(deer)] shall bear official identification before they leave a premises." *Id.* § 287.711b(1). "Official identification" is defined as "an identification ear tag, tattoo, electronic identification, or other identification as approved by the United States department of agriculture or the [MDA]." *Id.*

§ 287.706(2). In addition, the Act requires identification of all cattle, bison, goats and privately owned cervid when either presented at any livestock auction market or marketed for immediate slaughter. *Id.* § 287.733(2) & (3).

Bovine TB was discovered in Michigan cattle in 1998, apparently transmitted from wild deer. Thereafter, the Director of the MDA issued a series of orders pursuant to Section 9(8) of the Act establishing zones within Michigan based on the prevalence of the disease, setting testing requirements, imposing movement restrictions and requiring animal and premises identification. As part of this on-going TB eradication program, the Director issued an order effective March 10, 2002, establishing three zones within the state: (1) an infected zone consisting of four northeast Lower Peninsula counties; (2) a surveillance zone of six counties surrounding the infected zone; and (3) a disease free zone constituting all the remaining counties in Michigan. *See* MDA's Mot. to Dismiss and/or for Summ. J., App. at 10-11 (MDA Order Effective March 10, 2002). "Official identification" was required of "any domestic livestock" in any of the three zones that moved from any premises within the state. *See id.* In the infected zone, the use of electronic identification was "strongly encouraged." *Id.* at 10. This order was issued in conjunction with a 2002 Memorandum of Understanding ("MOU") between Michigan and USDA, by which USDA agreed to the maintenance of split status zones for bovine TB in Michigan.[4] The purpose of the 2002 MOU was to "establish criteria for the maintenance of split status zones for bovine tuberculosis (TB) in

---

[4] The USDA classifies each state for bovine TB. A zone comprising less than an entire state will be given upon request of that state if the USDA determines that (a) the state meets the requirements of 9 C.F.R. Part 77; (b) the state has imposed similar restrictions on the intrastate movement of cattle, bison and captive cervids as those imposed by the USDA on interstate movement; and (c) the designation of part of a state as a zone will be adequate to prevent the interstate spread of tuberculosis. *See* 9 C.F.R. § 77.3. When a state applies for split-state status, it must, among other requirements, enter into an MOU with USDA. *See id.* § 77.4(a)(3).

Michigan." *Id.* at 27 (2002 MOU). The 2002 MOU defined "domestic livestock" as "all cattle, goats, bison, and privately owned cervides." *Id.* Zones were established in Michigan by the 2002 MOU based on the risk level for bovine TB. The 2002 MOU "did not establish the use of electronic ear tags as a condition of maintaining zone status." *Id.* at 1-9 (Aff. of Kevin Kirk ("Kirk Aff.") ¶ 8).

The next order was effective October 1, 2002, and modified the March 10, 2002 order by requiring that "[a]ll herds in the Disease Free Zone must obtain a premises identification number issued by the department before any movement of livestock from such herds may occur," and that "[a]ll cattle (bovine) [in the infected and surveillance zones] being tested as part of a whole herd test to satisfy surveillance herd testing requirements shall be identified with Radio Frequency Identification (RFID) 'electronic' ear tags except under special circumstances approved by the director." *Id.* at 12-13 (MDA Order Effective October 1, 2002). The RFID ear tags and premises identification were not based on the NAIS protocol, but on an MDA identification system. *See* Kirk Aff. ¶ 7 ("The RFID ear tags were not in the NAIS format as there was no NAIS program at that time.").

The next relevant Director's order became effective on June 1, 2004. It required NAIS-compliant identification of cattle in a limited area of the State. Two zones were established: (1) the modified accredited zone consisting of 13 northeastern Lower Peninsula counties; and (2) the modified accredited advanced zone, consisting of the remainder of the Lower Peninsula counties and all the counties of the Upper Peninsula. For cattle in the 13-county modified accredited area, the June 1, 2004 order required NAIS-compliant RFID electronic ear tags when cattle were moved from a premises and when cattle on a premises were "initially identified" during TB testing. It stated:

> All cattle must be identified with RFID Electronic identification eartags prior to movement from a premises within the Modified Accredited Zone. Initial identification of cattle must utilize an RFID Electronic identification eartag issued by the Michigan Department of Agriculture to the premises at which the identification occurs.

*Id.* at 14 (MDA Order Effective June 1, 2004). MDA decided to require RFID tags "not because of any influence by the USDA, but because of favorable results from prior use of electronic ear tags[,]" including "[t]he accuracy of the data and improved speed and ease of traceability . . . ." Kirk Aff. ¶ 8. For cattle in the remainder of Michigan, the order required "official identification," which meant an MDA animal identification number but not numbers in the NAIS format or RFID ear tags.

MDA and USDA entered into another MOU in 2005. This MOU enabled the creation of three zones within the state, including a tuberculosis accredited free zone. Pursuant to the 2005 MOU, MDA accepted responsibility for "[r]equiring electronic identification and a movement permit for any cattle moved from [a] premises in the Modified Accredited zone." *Id.* at 47 (2005 MOU).[5] Because NAIS-compliant identification had already been ordered by the Director in June 2004 in the modified accredited zone, the 2005 MOU committed MDA to continuing NAIS-compliant electronic ear tags for cattle, but only in those Michigan counties.[6]

The final relevant Director's order became effective on March 1, 2007.[7] That order required "NAIS compliant RFID tags for all cattle moved from their premises, and all cattle tested

---

[5] This provision reflects the MDA's independent decision to use this method of tracking cattle in this zone, and the USDA's determination that the use of this method was acceptable to continue split-state status.

[6] Plaintiffs allege that MDA had implemented the entire NAIS program involving all livestock and poultry at all premises in Michigan but the 2005 MOU in fact was more limited.

[7] The March 1, 2007 MDA order has been revised by subsequent orders of August 15, 2007, and May 1, 2008, but it remains fundamentally the same.

in the modified accredited zone regardless of any movement from the premises." Kirk Aff. ¶ 10. The order stated:

> Effective March 1, 2007, all cattle must be identified with RFID electronic identification eartags prior to movement from a premises within Michigan, unless exempted by the director. Initial identification of cattle must utilize an RFID electronic identification eartag issued by the Michigan Department of Agriculture to the premises at which the identification occurs.

*Id*. at 17 (MDA Order Effective March 1, 2007). "The decision to identify all cattle with NAIS compliant RFID ear tags was not because of any influence of the USDA. MDA could see the real benefits of accurate data in the database for tracking animals and the labor and time savings." Kirk Aff. ¶ 10. However, MDA provided an exemption to accommodate the religious concerns for those farmers outside of the modified accredited zone. *See id.* at 65 (Dec. 20, 2006 Memorandum to Concerned Producers). The accommodation allows licensed livestock markets to sell and apply RFID tags at market, thereby allowing religious objectors outside of the modified accredited zone to avoid tagging their animals prior to movement. All of the individual Plaintiffs have premises outside of the modified accredited zone.[8] Thus, they are all eligible to take advantage of the exemption.

### C. Complaint Allegations

Plaintiffs' First Amended Complaint contains 426 paragraphs, 20 prayers for relief, and eleven counts, five of which are directed at each USDA and MDA and one directed at both. Plaintiffs allege that NAIS violates (1) the procedural requirements of the Administrative Procedure

---

[8] Plaintiff Greg Niewendorp had premises in the modified accredited zone but he has since moved of state and no longer owns cattle in Michigan. *See* Mem. in Supp. of Pl. Niewendorp's Mot. to Dismiss [Dkt. # 49]. As his claims are now moot, he will be dismissed for that reason.

Act ("APA"), 5 U.S.C. § 551 *et seq.* (Count I); (2) the procedural requirements of the Regulatory Flexibility Act, 5 U.S.C. § 601 *et seq.* (Count II); (3) the substantive requirements of the APA (Count III); (4) procedural and substantive due process under the Fifth Amendment to the U.S. Constitution (Count IV); (5) the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.* (Count VI); and (6) the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.* (Count VII). Plaintiffs allege that Michigan's implementation of NAIS violates (1) procedural and substantive due process under the Fourteenth Amendment to the U.S. Constitution (Count V); (2) the NEPA (Count VI); (3) the RFRA (Count VIII); (4) the procedural requirements of Michigan's Administrative Procedure Act ("MAPA"), Mich. Comp. Laws § 24.201 *et seq.* (Count IX); (5) the substantive requirements of MAPA (Count X); and (6) the free exercise clause of Michigan's Constitution (Count XI). Plaintiffs assert that the Court has federal question jurisdiction under 28 U.S.C. § 1331 over the allegations asserting violations of federal law (Counts I-VIII), and supplemental jurisdiction over the allegations asserting violations of Michigan law (Counts IX-XI).

## II. LEGAL STANDARDS

USDA moves to dismiss the First Amended Complaint for want of standing. Accordingly, the Court will treat USDA's motion as a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) ("the defect of standing is a defect in subject matter jurisdiction"); *Prosser v. Fed. Agric. Mortgage Corp.*, 593 F. Supp. 2d 150, 155 (D.D.C. 2009) ("Without standing, there is no subject matter jurisdiction."). This is so even though the parties have presented matters outside the pleadings. *See Haase*, 835 F.2d at 906. MDA moves to dismiss the First Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and moves for summary

judgment under Federal Rule of Civil Procedure 56. Because the parties have presented matters outside the pleadings, the Court will treat MDA's motion as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Because subject matter jurisdiction is an Article III as well as a statutory requirement, "no action of the parties can confer subject-matter jurisdiction upon a federal court." *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quotation marks and citation omitted). On a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *Rasul v. Bush*, 215 F. Supp. 2d 55, 61 (D.D.C. 2002) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

Because subject matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

## B. Federal Rule of Civil Procedure 56

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III. ANALYSIS

Defendants move to dismiss all allegations against each of them: the five counts directed at USDA, the five counts directed at MDA, and the one count directed at both. USDA

argues that Plaintiffs lack standing because their alleged injuries are not fairly traceable to it and would not be redressed by the relief they seek from it. MDA asserts that Plaintiffs' federal law counts fail to state a claim against it and that the Court is without jurisdiction over Plaintiffs' state law counts against it. Plaintiffs dispute the Defendants at all points.

### A. Counts Against USDA

"The irreducible constitutional minimum of standing contains three requirements." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) (quotation marks and citation omitted). "First and foremost, there must be alleged (and ultimately proved) an injury in fact — a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical." *Id.* at 103 (quotation marks and citations omitted). "Second, there must be causation — a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Id.* "And third, there must be redressability — a likelihood that the requested relief will redress the alleged injury." *Id.* "This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Id.* at 103-04; *see also Am. Library Ass'n v. FCC*, 401 F.3d 489, 493 (D.C. Cir. 2005) (same).

"The [Supreme] Court also has made clear that an injury will not be 'fairly traceable' to the defendant's challenged conduct nor 'redressable' where the injury depends not only on that conduct, but on independent intervening or additional causal factors." *Fulani v. Brady*, 935 F.2d 1324, 1329 (D.C. Cir. 1991). "[T]o establish redressability at the pleading stage, . . . the facts alleged [must] be sufficient to demonstrate a substantial likelihood that the third party directly injuring the plaintiff would cease doing so as a result of the relief the plaintiff sought." *Renal Physicians Ass'n*

*v. HHS*, 489 F.3d 1267, 1275 (D.C. Cir. 2007).

Plaintiffs' counts against USDA fail under both the causation and redressability prongs of Article III's case-or-controversy requirement. Each of Plaintiffs' six counts against USDA hinges on the erroneous assertion that NAIS requires the registration of PINs and the use of RFID tags. Under the NAIS, "[i]ndividual states may choose to keep premises registration voluntary or not, based on local needs." USDA's Sur-Reply in Supp. of Mot. to Dismiss, Ex. B (USDA's Premises Registration Brochure). Further, NAIS regulations require only "[a] means of officially identifying an animal or group of animals using devices or methods approved by the Administrator, including, but not limited to, official tags, tattoos, and registered brands when accompanied by a certificate of inspection from a recognized brand inspection authority." 9 C.F.R. § 71.1 (definition of "Official identification device or method"). The regulations "allow for the use of both currently available and emerging animal identification technologies." 69 Fed. Reg. 64,644, 64,645 (Nov. 8, 2004). The NAIS is "a system that is technology neutral, so that all existing effective technologies and new technologies that may be developed in the future may be utilized." *Id.* at 64,644.

Plaintiffs' alleged injuries are traceable to MDA's bovine tuberculosis eradication orders issued pursuant to Section 9(8) of Michigan's Animal Industry Act, Mich. Comp. Laws § 287.709(8). It was MDA, acting under state law prior to USDA's implementation of the NAIS, who in 2002 ordered that "[a]ll herds in the Disease Free Zone must obtain a premises identification number issued by the department before any movement of livestock from such herds may occur" and that "[a]ll cattle (bovine) being tested as part of a whole herd test to satisfy surveillance herd testing requirements shall be identified with Radio Frequency Identification (RFID) 'electronic' ear tags except under special circumstances approved by the director." MDA's Mot. to Dismiss or for

Summ. J., App. at 12-13 (MDA Order Effective October 1, 2002). It was MDA who in 2004 ordered, as part of its tuberculosis eradication program, that "[a]ll cattle must be identified with RFID Electronic identification eartags prior to movement from a premises within the Modified Accredited Zone." *Id.* at 14 (MDA Order Effective June 1, 2004). And it was MDA who in 2007 ordered, as part of its tuberculosis eradication program, that "all cattle must be identified with official RFID electronic identification eartags prior to movement from a premises within Michigan, unless exempted by the director." *Id.* at 17 (MDA Order Effective March 1, 2007).

Plaintiffs attribute MDA's actions to requirements imposed on it through the various MOUs agreed to by MDA and USDA. But these arguments fail in light of the uncontested fact that the MDA orders requiring PINs and RFID tags preceded the MOUs. In other words, the MOUs reflected Michigan law, adopted by Michigan independently, and not the dictates of USDA.[9] It may be that the mandates were important to obtaining USDA's agreement that Michigan was eligible for split-state TB status, but the mandates were adopted *in* Michigan, *by* Michigan first.[10]

In any event, despite Plaintiffs' repeated statements to the contrary, NAIS is neither "federal law" nor "federal regulation." It is an identification and tracking program developed by USDA and adopted by state agriculture departments on a voluntary basis. While that voluntariness

---

[9] Inasmuch as Section 11b of Michigan's Animal Industry Act, Mich Comp. Laws § 287.711b(1), was enacted in 2000, *see* Public Act 323 of 2000, requiring "official identification" of cattle before they leave a premises, *preceding* the 2002 MOU, clearly it was Michigan law and not the agreement between MDA and USDA that mandated cattle identification.

[10] For these same reasons, the Court rejects Plaintiffs' assertion that USDA is "using federal funds to coerce MDA to implement NAIS in the State of Michigan." That in 2006 MDA applied for federal funds to promote NAIS reflects MDA's prior independent decision that it "believes [NAIS] to be an effective tool for animal disease control and eradication." Kirk Aff. ¶ 14. Similarly, USDA's issuance of Veterinary Services Memoranda in 2008 does not operate retroactively to establish causation for the MDA's orders requiring PINs and RFID ear tags.

may be influenced by such desires as qualifying for split-state status, that goal does not rob state officials of decision authority.

Thus, the Court finds that the decisions to require registration of PINs and use of RFID tags were the independent decisions of MDA made under state law, and Plaintiffs cannot trace their alleged injuries to USDA simply because the NAIS allows states to make those decisions. *See, e.g., Fulani*, 935 F.2d at 1329. Further, because the source of Plaintiffs' alleged injuries is independent MDA orders, enjoining the implementation and enforcement of the NAIS would not provide Plaintiffs with redress. *See Renal Physicians Ass'n*, 489 F.3d at 1275. Plaintiffs' counts against USDA will therefore be dismissed for lack of subject matter jurisdiction.

**B. Counts Against MDA**

Plaintiffs allege that MDA's orders violate two federal statutes: the RFRA and the NEPA.[11] However, neither statute applies to state actors implementing state law. *See Olsen v. Mukasey*, 541 F.3d 827, 830 (8th Cir. 2008) (affirming dismissal of RFRA claim against state officials because state law is "not subject to RFRA"); *Karst Envtl. Educ. & Prot., Inc. v. EPA*, 475 F.3d 1291, 1298 (D.C. Cir. 2007) (affirming dismissal of NEPA claim because "nothing in the APA authorizes claims against nonfederal entities"). As the Court already has found, the cause of Plaintiffs' alleged injuries was independent orders issued by MDA pursuant to Section 9(8) of Michigan's Animal Industry Act, Mich. Comp. Laws § 287.709(8). Accordingly, Plaintiffs' RFRA and NEPA counts will be dismissed.

Plaintiffs also allege that MDA's orders violate the Due Process Clause of the U.S.

---

[11] NEPA claims must be brought under the judicial review provision of the APA, 5 U.S.C. § 702. *See, e.g., Tulare County v. Bush*, 306 F.3d 1138, 1143 (D.C. Cir. 2002).

Constitution. However, the basis for the count is that MDA failed to comply with Michigan law. *See* FAC ¶¶ 282- 87. "[T]he Eleventh Amendment denies federal courts jurisdiction to order state officials to conform their conduct to state law." *LaShawn A. v. Barry*, 144 F.3d 847, 852 (D.C. Cir. 1998) (citing *Pennhurst State School & & Hosp. v. Halderman*, 465 U.S. 89, 117-21 (1984)).

Plaintiffs cannot avoid the Eleventh Amendment by dressing their argument in constitutional language. *See McNeilus Truck & Mfg., Inc. v. Ohio ex rel. Montgomery*, 226 F.3d 429, 439 (6th Cir. 2000) ("McNeilus asserts that it violates the Fourteenth Amendment for a state not to follow its own rulemaking procedures. However, whether state officers have violated state law in failing to follow administrative procedures is a state law question in the first instance, and this court still lacks supplemental jurisdiction to consider the claim."). That is precisely what they have attempted to do. Plaintiffs' "constitutional" claim will be dismissed as barred by the Eleventh Amendment.[12]

Finally, Plaintiffs assert that the Court has supplemental jurisdiction over the remaining three state law counts. "A federal court has jurisdiction over substantial federal claims, together with local law claims that are part of a common nucleus of operative fact." *Decatur Liquors, Inc. v. District of Columbia*, 478 F.3d 360, 362 (D.C. Cir. 2007). "But a federal court lacks jurisdiction altogether if the federal claims are insubstantial." *Id.* "A necessary condition for the exercise of supplemental jurisdiction is the substantiality of the federal claims." *Id.* at 363. "If the federal claims are obviously frivolous or so attenuated and unsubstantial as to be absolutely devoid

---

[12] None of the documents or actions cited by the Plaintiffs constitutes or demonstrates a waiver of Michigan's constitutional rights under the Eleventh Amendment. None of them even speaks to the issue. Plaintiffs' assertion to the contrary is not a "fact" to which the Court gives a broad reading but is a legal statement that is in error.

of merit, a federal court lacks subject-matter jurisdiction over those claims and, consequently, any local law claims." *Id.*

Such is the case here. As already discussed, Plaintiffs' RFRA and NEPA counts against MDA fail because neither statute applies to the MDA's orders that are the source of Plaintiffs' alleged injuries, and Plaintiffs' "constitutional" count against MDA is barred by the Eleventh Amendment. Because Plaintiffs' federal counts against MDA are insubstantial, the Court is without supplemental jurisdiction over the remaining state law counts. *See id.* at 364.

### IV. CONCLUSION

Living a pastoral life in the 21st century is clearly a struggle and Plaintiffs' complaints about forced electronic tagging and forced inclusion in a national database are understandable. They, however, completely fail to address Michigan state law, which authorizes the Director of MDA to adopt programs such as NAIS-compliance for cattle, and Plaintiffs' reliance on federal law is misplaced. For the foregoing reasons, the Court will grant USDA's motion to dismiss [Dkt. # 29] under Federal Rule of Civil Procedure 12(b)(1) and will grant MDA's motion for summary judgment [Dkt. # 31] under Federal Rule of Civil Procedure 56. Further, the Court will grant USDA's motion to dismiss Plaintiff Greg Niewendorp's Claims as moot [Dkt. # 50]. All other pending motions will be denied as moot. A memorializing Order accompanies this Memorandum Opinion.


DATE: July 23, 2009                            /s/
                                               ROSEMARY M. COLLYER
                                               United States District Judge